# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| JAMES BELLANCA, an Ohio citizen, individually and as a representative of a class of similarly-situated persons, <br><br> Plaintiff, <br><br> v. <br><br> ZENLEADS, INC., d/b/a Apollo.io, a Delaware corporation, <br><br> Defendant. | Case No.: <br><br> Class Action |

## CLASS ACTION COMPLAINT

Plaintiff, James Bellanca ("Bellanca" or "Plaintiff"), through his attorneys, brings this action on behalf of himself and all other persons similarly situated and alleges the following against Defendant Zenleads, Inc., d/b/a Apollo.io ("Apollo" or "Defendant"):

## NATURE OF ACTION

1. Plaintiff and members of the proposed class (the "Class" or "Class Members") seek statutory damages, an injunction, and other relief from Apollo for violations of the Ohio Right of Publicity Statute ("ORPS"), Ohio Revised Code § 2741.01, *et seq.*, and Ohio common law.

2. ORPS prohibits using an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance for commercial purposes without prior written consent. OH ST § 2741.02. Ohio common law also precludes the commercialization of an individual's name or likeness through the tort of misappropriation. *James v. Bob Ross Buick, Inc.*, 167 Ohio App. 3d 338, 342 (2006) (citing *Zacchini v. Scripps-Howard Broadcasting Co.*, 47 Ohio St. 2d 224,

Case: 1:23-cv-01094-DAR Doc #: 1 Filed: 05/31/23 2 of 15. PageID #: 2

229-30 (1976) (adopting definition of the tort of misappropriation as set forth in the Restatement of Torts 2d, Section 652C)).

3. Apollo provides an internet-based business intelligence platform to assist sales and marketing professionals in connecting with potential prospects and others who may be interested in its products. Users of Apollo's platform can obtain personal information of various individuals, including their identifying information ("profiles"), based on particular search queries.

4. While Apollo offers a free version of its platform, that version limits access to individual profiles and other attributes offered by Apollo's platform. Apollo also offers paid subscriptions to its platform, which provides greater access to the platform and individual profiles. Apollo uses the free access to its platform, along with the limited access to individual profiles, to familiarize users with the platform, thus incentivizing them into paid subscriptions.

5. Plaintiff and the Class have no relationship with Apollo. More importantly, Plaintiff and the Class never provided Apollo with written consent to use their identity and other personal information to advertise subscriptions to its platform.

6. Despite failing to obtain written consent from Plaintiff and the Class, Apollo nevertheless utilized their personal identifying information for the purpose of enticing users of its platform to enter into paid subscriptions for additional access to the platform. In other words, Apollo used Plaintiff's and other Class Members' identity for commercial purposes without their written permission in violation of ORPS and Ohio common law.

7. Plaintiff brings this Complaint seeking an order (i) declaring that Apollo's conduct violates ORPS and common law, (ii) requiring that Apollo cease the unlawful activities described herein, (iii) awarding Plaintiff and the Class actual damages, including any profits

2

229-30 (1976) (adopting definition of the tort of misappropriation as set forth in the Restatement of Torts 2d, Section 652C)).

3. Apollo provides an internet-based business intelligence platform to assist sales and marketing professionals in connecting with potential prospects and others who may be interested in its products. Users of Apollo's platform can obtain personal information of various individuals, including their identifying information ("profiles"), based on particular search queries.

4. While Apollo offers a free version of its platform, that version limits access to individual profiles and other attributes offered by Apollo's platform. Apollo also offers paid subscriptions to its platform, which provides greater access to the platform and individual profiles. Apollo uses the free access to its platform, along with the limited access to individual profiles, to familiarize users with the platform, thus incentivizing them into paid subscriptions.

5. Plaintiff and the Class have no relationship with Apollo. More importantly, Plaintiff and the Class never provided Apollo with written consent to use their identity and other personal information to advertise subscriptions to its platform.

6. Despite failing to obtain written consent from Plaintiff and the Class, Apollo nevertheless utilized their personal identifying information for the purpose of enticing users of its platform to enter into paid subscriptions for additional access to the platform. In other words, Apollo used Plaintiff's and other Class Members' identity for commercial purposes without their written permission in violation of ORPS and Ohio common law.

7. Plaintiff brings this Complaint seeking an order (i) declaring that Apollo's conduct violates ORPS and common law, (ii) requiring that Apollo cease the unlawful activities described herein, (iii) awarding Plaintiff and the Class actual damages, including any profits

derived from and attributable to the unauthorized use of their names or likenesses, or statutory damages between $2,500 and $10,000 as provided at OH ST § 2741.07(b), and (iv) an award of punitive damages, if warranted, and reasonable attorneys' fees, court costs, and other expenses associated with this action.

## PARTIES

8. Plaintiff James Bellanca is a citizen of the State of Ohio residing in Cleveland, Ohio.

9. Defendant Apollo is a Delaware corporation with its headquarters located in Covina, California. Through its proprietary software, Apollo seeks out and compiles identifying information of Ohio citizens and uses that information to market its online platform to Ohio citizens and others without written consent.

## JURISDICTION AND VENUE

10. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2) (the "Class Action Fairness Act") because diversity of citizenship exists between the parties – Plaintiff is a citizen of Ohio and Apollo is a Delaware corporation with headquarters in California. Further, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, with at least 100 or more potential class members based on the number of individuals identified in Apollo's platform and the damages available through ORPS. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11. The Court has personal jurisdiction over Apollo because it sought out and compiled the names and other identifying information of Plaintiff and other Ohio citizens and used that information for marketing Ohio citizens and others without their written consent. In so doing, Apollo committed the statutory violations and common law torts related to the matters

3

complained of herein in this District.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## OHIO RIGHT OF PUBLICITY STATUTE

13. ORPS prohibits the use of "any aspect of an individual's persona for a commercial purpose … [without] written consent." OH ST § 2741.02.

14. ORPS defines "persona" as "an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value." OH ST § 2741.01(A). "Commercial purpose" is defined in pertinent part as "the use of or reference to an aspect of an individual's persona …. (2) For advertising or soliciting the purchase of products, merchandise, goods, services, or other commercial activities not expressly exempted under this chapter." OH ST § 2741.01(B).

15. A person who violates ORPS is liable in a civil action for actual damages, including any profits derived from and attributable to the unauthorized use of an individual's persona or, at the election of the plaintiff and in lieu of actual damages, statutory damages in the amount of at least $2,500 and not more than $10,000, as determined in the discretion of the trier of fact. OH ST § 2741.07(A)(1)(a) and (b). ORPS further provides that punitive or exemplary damages may be rewarded and authorizes the issuance of injunctive relief where appropriate. OH ST § 2741.07(A)(1)(c) and (D)(3).

16. The remedies provided for in ORPS are not exclusive; rather, they are in addition to any other remedies provided for by state or federal statute or common law. OH ST § 2741.08.

**FACTUAL ALLEGATIONS**

17. Apollo touts itself as "a leading data intelligence and sales engagement platform trusted by 20,000 paying customers."[1]

18. Apollo offers an online platform, which can be accessed at its website, www.apollo.io, or through its Google Chrome extension. According to Apollo, its platform helps "1 million sales professionals enrich and analyze prospects' data to increase quality conversations and opportunities" through "advanced algorithms and unique data acquisition methods."

19. Apollo's platform provides access to its business-to-business database, which contains profiles for over 265 million individual contacts and 60 million companies. Information that may be provided in an individual's profile includes name, job title, email addresses, and telephone numbers. Users of the platform not only can search the profiles, but also can contact individuals and companies through the platform and organize that outreach with the platform.

20. The data for Apollo's platform comes from dozens of verified sources. Apollo scrapes from hundreds of millions of websites, uses machine learning algorithms, and utilizes a proprietary data network of over 500,000 contributions each day.

21. As stated, users of the platform can access it at Apollo's website and through its Google Chrome extension. At the website, the user can find and filter information about companies in various industries. Once a company is selected, information about it and its employees, including employee names and titles becomes available. From there, the user can select a specific employee to view identifying information of that person as stored on the platform. Profiles show such information as the employee's name, title, email, and telephone numbers.

---

[1] Information regarding Apollo found at its website, www.apollo.io, last visited on May 17, 2023.

22. The platform also allows users to search for individuals based on selected criteria, such as by name, industry, work title, and many other options. After conducting a search, Apollo will provide a list of individuals matching the criteria selected. Depending on the search parameters, the results can be in the thousands. Similar to the company search, the platform will indicate that contact information for each individual is available.

23. After a search is conducted, the user will be presented with a list of individuals to select. When an individual is selected, his or her name and job title will appear, if available. Next to the selected individual's name will be a tab for access to an email address and telephone number. When that tab is selected, personal and business emails are shown, along with another tab for a request for a mobile telephone number. In order to request a mobile number, the user must expend one "credit." These credits limit the amount of mobile numbers a user can view. The number of credits allotted is dictated by the type of subscription the user has with Apollo for accessing the platform.

24. The Google Chrome extension allows the user to utilize the platform with other sites, such as LinkedIn, Gmail, Google Calendar, and Salesforce.

25. For instance, on LinkedIn,[2] Apollo appears as a tab on the side of the site. When the tab is selected, the user is provided with the additional verified contact data contained in Apollo's platform that corresponds with the LinkedIn profile. Similar to the website, this tab provides the individual's employer, title, email addresses, work number, and, if available, mobile number at the expense of one credit.

26. Before Apollo users, *i.e.*, customers/prospective customers, are allowed to use the platform, they are required to set up an account. This can be done for free. However, the free

---

[2] LinkedIn is the world's largest professional network, with more than 875 million members. Information regarding LinkedIn found at its website, www.linkedin.com, last visited on May 18, 2023.

version is limited. For instance, when utilizing the free version, a user is only allotted five mobile phone number credits a month. After the credits are expended, the user receives a message indicating that he or she must enter into a paid subscription in order to view more numbers. A user of the free version is also limited to 25 profiles per search and may only export ten profiles per month. Attempts to go beyond those limits also prompts solicitations for paid subscriptions.

27. For users seeking more access to the platform, Apollo offers several paid subscription plans. Customers can select the "Basic Plan" for $39 a month, billed annually, which provides 25 mobile credits a month, 250 export credits a month, and additional search results. The mobile and export credits can be increased to 100 and 1,000 a month respectively if the customer chooses the "Professional Plan" for $79 a month, billed annually. Both plans allow the customer to purchase additional credits as needed.

28. Profiles on Apollo's platform provide enough information to identify an individual. In fact, Apollo claims to have the world's most accurate business-to-business database.

29. The purpose behind Apollo's use of individual profiles in conjunction with the limited free access to its platform is singular: to advertise and convince prospective customers to enroll in and ultimately purchase its monthly subscription services, whereby the user can obtain greater access to the platform and increase credit limits to enhance their sales and networking needs. In other words, the profiles, the limited platform usage, and the minimum number of mobile phone and export credits are part of Apollo's overall effort to sell its monthly subscriptions.

30. On information and belief, Apollo collects personal information of individuals, including Class Members, without their knowledge or awareness and creates profiles on its

7

platform using that information. Apollo does not request or obtain consent or written authorization from those individuals before using their personal information and identities to market its paid subscription services as described herein.

31. While Apollo offers individuals the opportunity to opt out of its database, this is of little help since the vast majority of people are unaware that they are in the database in the first place. Apollo primarily obtains its data from third parties rather than directly from individuals that appear on the platform.

### Facts relating to James Bellanca:

32. In May 2023, Bellanca discovered that his identity was used on Apollo's platform. Indeed, Bellanca can confirm that when his name is searched for on Apollo's platform, a profile appears with his work history, email address, and a tab with the option to view his mobile telephone number.

33. Bellanca further confirms that when the tab with the option to reveal his mobile number is selected, one credit is spent on the platform and his mobile number is revealed. If a user of the platform does not have sufficient credits to reveal Bellanca's mobile number, the user will be prompted to enter into a paid subscription or, for users with a paid subscription, purchase additional credits to reveal the number.

34. Potential customers availing themselves of Apollo's platform are able to view and, on information and belief, have viewed Bellanca's profile. Apollo uses access to Bellanca's profile, and other similar profiles, to familiarize potential customers to the platform and incentivize them to enter into paid subscriptions. Thus, Bellanca's identity has been used by Apollo to market its platform.

35. Bellanca has no relationship with Apollo. He neither utilizes the platform nor

subscribes to it.

36. Bellanca did not give consent, written or otherwise, to Apollo to use his name, likeness, personal information, or identity in any way. Nor did Bellanca provide Apollo with written consent to use his identity for commercial purposes. Had Apollo requested his consent, Bellanca would not have provided it.

37. Apollo did not obtain written consent from Bellanca prior to compiling his personal information to create a profile of him for its platform. Apollo also did not obtain prior written permission from Bellanca to use that profile, which includes his name, work history, email address, and access to his mobile phone number to advertise paid subscriptions for its platform. On information and belief, Apollo did not obtain written permission from any sources from which it compiled Bellanca's personal identifying information.

38. Bellanca has intellectual property and privacy interests in his name, likeness, and identity recognized by Ohio statutory and common law. Bellanca has the right to exclude anyone from using his name, likeness, and persona for commercial purposes without his written permission.

39. Apollo injured Bellanca by using his name, likeness, and persona for its own commercial purposes without compensation or permission and potentially subjecting him to harassing and uninvited marketing and sales communications.

## CLASS ALLEGATIONS

40. Pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiff brings this class action on behalf of himself and the following class:

> All current and former Ohio residents who are not subscribers to Apollo's platform and whose name and/or identity are used to market paid subscriptions for Apollo's platform.

Excluded from the class are Apollo, its officers, directors, shareholders, and employees, and members of the Ohio judiciary. Plaintiff reserves the right to amend the Class definition upon completion of class discovery when the contours and the parameters of the class become more apparent.

41. **Class Size (Fed. R. Civ. P. 23(a)(1)):** On information and belief, the members of the Class are so numerous that joinder of all members is impractical. Based on the investigation by his counsel and representations made by Apollo on its website, Plaintiff reasonably believes that the Class comprises thousands of current and former Ohio citizens whose profiles are compiled and maintained in Apollo's database and searchable on its platform. The exact number of persons in the Class can be determined from records maintained by Apollo, but certainly exceeds 100.

42. **Commonality (Fed. R. Civ. P. 23(a)(2)):** There are many questions of law and fact that exist as to Plaintiff and members of the class, and those questions substantially predominate over any questions that may affect individual Class Members. Common questions of fact and law include, but are not limited to:

(a) whether Apollo uses Plaintiff's and Class Members' names and identities in advertisements for its own commercial benefit;

(b) whether Apollo obtained written consent from Plaintiff and the Class prior to using their names and identities in advertisements promoting its platform as required by OH ST § 2741.02;

(c) whether the conduct described herein constitutes a violation of ORPS and Ohio common law;

(d) whether Plaintiff and the Class are entitled to punitive or exemplary damages for Apollo's commercial use of their names, likenesses, and personas; and

(e) whether Plaintiff and Class Members are entitled to declaratory, injunctive, and monetary relief as requested.

43. **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of the claims of the members of the Class. Apollo's misuse of Plaintiff's and Class Members' names, likenesses, and personas was the same for each.

44. **Fair and Adequate Representation (Fed. R. Civ. P. 23(a)(4)):** Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained competent counsel experienced in class action litigation in state and federal courts nationwide and Plaintiff has no interest adverse to any member of the Class. Plaintiff intends to prosecute this case vigorously on behalf of himself and the Class.

45. **Injunctive and/or Declaratory Relief (Fed. R. Civ. P. 23(b)(2)):** As demonstrated above, Apollo has acted on grounds generally applicable to the proposed class such that final injunctive relief, as contemplated by OH ST § 2741.07(D)(3), is appropriate with respect to the Class as a whole.

46. **Predominance and Superiority (Fed. R. Civ. P. 23(b)(3)):** Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

(a) Proof of liability on Plaintiff's claims will also prove liability for the claims of the Class without the need for separate or individualized proceedings;

(b) Evidence regarding defenses or any exceptions to liability that Apollo may assert and attempt to prove will come from Apollo's records and will not require individualized or separate inquiries or proceedings;

(c) Apollo has acted and is continuing to act pursuant to common policies or practices in the same or similar manner with respect to all Class Members;

(d) The injury suffered by each Class Member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Apollo economically feasible. Even if Class Members could afford individual litigation, those actions would put immeasurable strain on the court system. A class action, on the other hand, will permit a large number of claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs; and

(e) This case is inherently manageable as a class action in that:

(i) Apollo's records will enable Plaintiff to readily identify Class Members and establish liability and damages;

(ii) Liability and damages can be established for Plaintiff and the Class with the same common proofs;

(iii) A class action will result in an orderly and expeditious administration of claims and it will foster economies of time, effort, and expense;

(iv) A class action will contribute to uniformity of decisions concerning Apollo's practices; and

(v) As a practical matter, the claims of the Class are likely to go unaddressed absent class certification.

## COUNT I
## Violation of ORPS, Ohio Revised Code § 2741.01, *et seq.*

47.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

48.     As stated, ORPS prohibits the use of an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance for commercial purposes without prior written consent. OH ST § 2741.02.

49.     By engaging in the foregoing acts and omissions, Apollo used Plaintiff's and Class Members' names, voices, signatures, photographs, images, likenesses, and/or distinctive appearances for commercial purposes without first obtaining written consent.

50.     Under ORPS, Apollo is liable for either actual damages, including any profits derived from and attributable to the unauthorized use of an individual's persona or statutory damages in the amount of at least $2,500 and not more than $10,000, as determined in the discretion of the trier of fact. OH ST § 2741.07(A)(1)(a) and (b). Plaintiff may also be entitled to punitive or exemplary damages and injunctive relief. OH ST § 2741.07(A)(1)(c) and (D)(3).

51.     As a result of Apollo's violations of ORPS, Plaintiff and the Class have suffered injury to their privacy rights and economic damages. Plaintiff and Class Members have been denied the commercial value of their names, voices, signatures, photographs, images, likenesses, and/or distinctive appearances, which Apollo used without permission from or compensation to Plaintiff and the Class. Plaintiff and Class Members were denied their statutorily protected right to control how their names, voices, signatures, photographs, images, likenesses, and/or distinctive appearances are used and suffered economic damages based on that misuse.

52. Plaintiff, on behalf of the Class, seeks: statutory damages for Apollo's violations of ORPS, or alternatively, actual damages and profits derived from the unauthorized use of Plaintiff's and Class Members' names, voices, signatures, photographs, images, likenesses, and/or distinctive appearances; punitive or exemplary damages, if warranted; prejudgment interest; injunctive and declaratory relief; and an award of reasonable attorneys' fees, court costs, and other expenses associated with this action.

## COUNT II
### Ohio Common Law Tort of Appropriation of Name or Likeness

53. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

54. Ohio common law recognizes the tort of appropriation of name or likeness. The tort creates a cause of action for the appropriation of a name or likeness by a defendant for the defendant's own use or benefit. *James*, 167 Ohio App. 3d at 342 (citing *Zacchini*, 47 Ohio St. 2d at 229-30).

55. By engaging in the foregoing acts and omissions, Apollo appropriated the names and likenesses of Plaintiff and Class Members for its own commercial benefit.

56. Pursuant to Ohio common law, Plaintiff, on behalf of himself and the Class, seeks monetary recovery in the amount of the commercial benefit Apollo derived from its misuses of their names and likenesses.

WHEREFORE, Plaintiff, James Bellanca, individually and on behalf of all other similarly-situated individuals, demands judgment in his favor and against Defendant Zenleads, Inc., d/b/a Apollo.io as follows:

A. Certifying this case as a Class Action and appointing Plaintiff and his attorneys as class representative and class counsel, respectively;

B.      Declaring that Apollo's actions, as described herein, violate ORPS and Ohio common law;

C.      Awarding statutory damages to Plaintiff and the Class for violating ORPS and/or actual damages and profits derived from the unauthorized use of Plaintiff's and Class Members' names, likenesses, and personas, plus prejudgment interest;

D.      Enjoining Apollo from committing further misuse of Plaintiff's and the Class's names, likenesses, and personas;

E.      Awarding Plaintiff reasonable attorneys' fees, court costs, and other expenses associated with this action as provide by ORPS; and

F.      Awarding such other and further relief as this Court deems appropriate and just.

          James Bellanca, individually and as a representative of a class of similarly-situated persons

By:   s/ Ryan M. Kelly
       One of his attorneys

Ryan M. Kelly
ANDERSON + WANCA
3701 W. Algonquin Rd. Ste 500
Rolling Meadows, IL 60008
Telephone: (847) 368-1500
rkelly@andersonwanca.com